```
          IN THE UNITED STATES DISTRICT COURT FOR
          THE DISTRICT OF MARYLAND, NORTHERN DIVISION
```

|   |   |   |
|---|---|---|
| ELIZABETH VON STEIN, | * | |
| Plaintiff, | * | |
| v. | * | CIVIL NO.: WDQ-06-1867 |
| THE AMERICAN RED CROSS FREDERICK COUNTY CHAPTER, ET AL., | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

MEMORANDUM OPINION

Elizabeth Von Stein has sued the National American Red Cross and the American Red Cross Frederick Chapter (the "Chapter") for failure to pay overtime in violation of the Maryland Wage and Hours laws[1] and the Fair Labor Standards Act,[2] and for her termination in violation of the Family and Medical Leave Act of 1993.[3]  She has also sued for abusive discharge in response to her filing a claim for workers' compensation.

Pending are Von Stein's motion to withdraw Counts I-III and for summary judgment as to Count IV, abusive discharge.  For the reasons discussed below, the motion to withdraw will be granted

---

[1] Md. Code Ann., Lab. & Empl. §§ 3-420 *et seq*.

[2] 29 U.S.C. §§ 201 *et seq*.

[3] 29 U.S.C. §§ 2601 *et seq*.

1

with prejudice and the motion for summary judgment will be denied.

I.   Background

In 2001, Von Stein began working for the Chapter as an Executive Assistant.  Mem. Supp. Mot. for Summ. J. (the "Plaintiff Mot.") (Affidavit of Von Stein, ¶ 4).  Von Stein received overall ratings of "Outstanding" in her staff evaluation reports for the period February 12, 2002 to March 31, 2003 and the period June 1, 2003 to March 31, 2004.  Plaintiff Mot. Ex. 2 (Staff Evaluation, Evaluation Period: 2/12/02 to 3/31/03, at 7) (the "'02-'03 Evaluation"), Ex. 3 (Staff Evaluation, Evaluation Period: 6/1/03 to 3/31/04, at 9) (the "'03-'04 Evaluation").

On June 9, 2005, Leah Crace, Executive Director of the Chapter, informed Von Stein of an increase in her salary.  *Id*. Ex. 4 (June 9, 2005 letter from Crace to Von Stein).  In addition, her evaluation for the period from June 2004 to June 2005 contained praise except for a reference to her exceeding her allotted paid time off ("PTO").  *Id*. (Evaluation for June 2004-June 2005) (the "'04-'05 Evaluation").

On July 15, 2005, Von Stein suffered an accidental injury at work.  Von Stein Aff. ¶ 17.  On August 30, 2005, Von Stein initiated a workers' compensation claim with the Chapter because her primary healthcare provider refused to cover costs related to that injury.  *Id*. ¶ 19.  Treatment for the injury included

2

physician-ordered physical therapy and other medical appointments beginning September 2, 2005 and continuing through her termination.  *Id*. ¶ 18.

The facts, viewed in the light most favorable to the Chapter, suggest that in the fall and winter of 2005-2006, Von Stein missed work for her physical therapy sessions and had some performance issues.  Mem. Opp. Mot. for Summ. J. (the "Def. Mot.") (Declaration of Crace, ¶¶ 9-24).  On December 20, 2005, Von Stein filed a claim with the Maryland Workers Compensation Commission.  Plaintiff Mot. Ex. 11 (Workers' Compensation Claim).  On January 12, 2006, Crace terminated Von Stein's employment because she was "not meeting [Crace's] expectations in performing [her] job duties and responsibilities."  *Id*. Ex. 1 (January 12, 2006 termination letter from Crace to Von Stein).

II. Analysis

A.   Motion for Summary Judgment

Von Stein has moved for summary judgment on Count IV, abusive discharge, arguing that the sole and direct reason for her termination was retaliation for her filing a claim with the Maryland Workers' Compensation Commission.  The Chapter responds, arguing that Crace terminated Von Stein's employment for two reasons: 1) repeated absences from work; and 2) failure to adequately undertake her job responsibilities.

3

1.   Standard of Review

Under Rule 56(c), summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The court must view the facts and reasonable inferences drawn therefrom "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The opposing party, however, must produce evidence upon which a reasonable fact finder could rely. *Celotex*, 477 U.S. at 317. The mere existence of a "scintilla" of evidence is insufficient to preclude summary judgment. *Anderson*, 477 U.S. at 252.

2.   The Termination of Von Stein's Employment

The parties do not contest that Von Stein was an at will employee. Maryland, however, recognizes "a cause of action for abusive discharge by an employer of an at will employee when the motivation for the discharge contravenes some clear mandate of public policy." *Adler v. Am. Standard Corp.*, 291 Md. 31, 46 (1981). The legislative branch normally establishes this public policy. *Id.* at 45.

Maryland workers' compensation laws prohibit the discharge of an employee from employment solely because the employee files a workers' compensation claim. Md. Code Ann., Lab. & Empl. § 9-1105. A discharge in violation of § 9-1105 has been recognized as violating a clear mandate of public policy. *Ayers v. ARA Health Services, Inc.*, 918 F.Supp. 143, 146 (D. Md. 1995). However, "an employee's protection from discharge in retaliation for claiming statutory benefits does not include protection for excessive absence from work due to work-related injury." *Kern v. South Balt. Gen. Hosp.*, 66 Md. App. 441, 452 (1986).

In essence, Von Stein argues that the only conclusion to be drawn from the circumstances surrounding her firing is that the termination was retaliatory. Von Stein notes that in her '02-'03 Evaluation and '03-'04 Evaluation, her score led to a rating of "Commendable" but that Crace used her discretion to increase the rating to "Outstanding," the highest level available. In fact, the '03-'04 Evaluation also noted that Von Stein "develops good relationships with the volunteers assigned to her" and that she is "a great asset to our Chapter." '03-'04 Evaluation 9.

In addition, her performance from 2004 to 2005 led to an expanding role in the Chapter with an accompanying increase in her salary on June 9, 2005. Although her '04-'05 Evaluation noted that she exceeded her annual allotted PTO, it cited numerous examples of high quality work, including: 1) her

5

acceptance of new responsibilities in the financial area; 2) that she was a great asset for a golf fund-raising event; 3) her efforts in putting together a very successful ladies fund-raising event; and 4) her publication of a "very nice" store brochure for the Chapter. '04-'05 Evaluation. The review also noted that "[s]he works well with other staff and is a proven team member." *Id*. In fact, on October 18, 2005, Crace presented Von Stein with a certificate for "outstanding performance" as a fundraiser for the Chapter. Plaintiff Mot. Ex. 9. (Certificate for Outstanding Performance).

Von Stein argues that the negative comment in the '04-'05 Evaluation regarding her PTO use has nothing to do with work performance. Plaintiff Mot. at 9. As attendance is inextricably linked with work performance, the Court rejects this contention.

As evidence that Von Stein's absenteeism motivated her firing, the Chapter argues that Crace brought up Von Stein's absences in each evaluation. Def. Mot. at 8. But the relationship between Von Stein's absences from February 2002 to June 2005 and her termination dissolves when viewed against the discretionary upgrades to "Outstanding" in her evaluations, the increased responsibility, and the increased salary. This evidence, when considered in its totality, indicates that Von Stein, while perhaps not the model employee from an attendance standpoint, more than adequately performed her job

6

responsibilities at least through the end of the summer of 2005. Based solely on this evidence, a reasonable jury could not return a verdict for the Chapter.

The Chapter, however, also points to events that occurred in the fall and winter of 2005-2006.  In mid-November of 2005 and in response to Von Stein's absences for physical therapy, Crace asked that Von Stein schedule the appointments outside of work hours and informed her that appointments during work hours would require that PTO time be utilized.  Crace Decl. ¶ 9.  On November 15, 2005, Crace sent a memorandum to the Chapter's staff informing them that PTO is to be used in full or half day increments, in accordance with the Chapter's employee handbook, (the "Employee Handbook"), and that absence for a doctor's appointment will require use of PTO.  Plaintiff Mot. Ex. 10 (Memorandum to Staff regarding PTO).

The Chapter notes that on December 8, 2005, Crace informed Von Stein that several of her scheduled physical therapy appointments were not convenient with her work schedule, but Von Stein allegedly left for physical therapy as planned.  Def. Mot. at 9.

On December 14, 2005, Crace informed Von Stein that she had just one more day of PTO left for the fiscal year.  Def. Mot. Ex. 9 (December 14, 2005 email from Crace to Von Stein) (the "Dec. 14 Email").  Von Stein had 15 days of PTO for each fiscal year,

7

which runs from July 1 until June 30. *Id*. at 2; Ex. 1 at 18 (Employee Handbook). The email also noted that leave without pay (which is discretionary and used once PTO is exhausted) would not be authorized given her absenteeism. Dec. 14 Email.

On December 21, 2005, Crace informed Von Stein that she had just 1/2 day of PTO left for the fiscal year. Def. Mot. Ex. 10 (December 21, 2005 email from Crace to Von Stein) (the "Dec. 21 Email"). Crace reminded Von Stein that the physical therapy appointments could be scheduled outside of business hours and reiterated that absences after the alotted PTO is exhausted would not be permitted. Dec. 21 Email. In particular, Crace stated that Von Stein's request for leave on December 28 was denied because her PTO was exhausted. *Id*. The email also informed Von Stein that "violation may result in disciplinary actions up to and including termination of employment." *Id*.

Despite Crace's denial of leave without pay in the Dec. 21 Email, Von Stein took off on December 29 and 30. Def. Mot. Ex. 11 (Memorandum from Crace to Von Stein regarding Unexcused Leave) (the "Unexcused Leave Memo"). On January 3, 2006, Crace sent Von Stein a formal memorandum discussing her absences and exhaustion of PTO. *Id*. Crace informed Von Stein that her paycheck would reflect leave without pay, that leave without pay would not be authorized, and that further absences could lead to "disciplinary action up to and including termination of your employment." *Id*.

8

The Chapter also points to evidence of performance issues that influenced the decision to fire Von Stein. The Chapter relies on unlabeled, typed statements apparently included in Von Stein's personnel file to support its argument that: 1) concerns were raised regarding Von Stein's attitude in coordinating the fundraising event for which she ultimately received the certificate mentioned above; and 2) Von Stein refused to order a requested office product. Def. Mot. Ex. 13 (May 2005 statement); Ex. 18 (Jan. 4, 2006 statement).

The Chapter points to additional performance issues occurring in the fall and winter of 2005-2006, alleging, for example, that Von Stein made inappropriate comments to a volunteer when Von Stein said that she may not remain with the Chapter. *Id*. Ex. 14 (November 2005 emails among employees of the Chapter). The Chapter alleged that Von Stein "badgered" a Chapter Board Member about money owed for a vest purchased. *Id*. Ex. 15 (Early December 2005 emails between Crace and Von Stein). In addition, the Chapter alleges that Von Stein missed a deadline and lied about locking some file cabinets. *Id*. Exs. 17, 19. Although authenticated in Crace's Declaration, these email exhibits alone do not afford much support for Crace's allegations as they contain perfunctory and conclusory statements handwritten by Crace. *See Evans v. Technologies Applications & Service Co.*, 80 F.3d 954, 962 (summary judgment affidavits cannot be

9

conclusory).

If an employer has "some legitimate reason for discharging an at will employee, no liability arises." *Ayers*, 918 F.Supp. at 149. In light of the Dec. 14 Email, the Dec. 21 Email, the Unexcused Leave Memo, and the limited evidence of performance issues, the Chapter has produced evidence upon which a reasonable jury could rely in returning a favorable verdict. The Court also notes that several of the incidents that the Chapter alleges influenced the decision to fire Von Stein occurred before the Dec. 20 filing of her workers' compensation claim.

B.   Motion to Withdraw

As the motion to withdraw counts I, II, and III is unopposed, the Court will dismiss them with prejudice.

III. Conclusion

As the Chapter may be able to establish that Von Stein was not discharged solely because she filed a workers' compensation claim, summary judgment is not appropriate, and the Plaintiff's motion will be denied. For the reasons stated above, Von Stein's motion to withdraw will be granted.

December 12, 2006                              /s/
Date                                    William D. Quarles, Jr.
                                        United States District Judge